**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STEPHANIE GARZA,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ANTONY BLINKEN**, **SECRETARY,** | ) |
| **UNITED STATES DEPARTMENT OF STATE,** | ) |
| **2201 C Street, NW** | ) |
| **Washington, DC 20520,** | ) |
| | ) |
| *Defendant*, | ) |
| | ) |
| **Serve:** | ) |
| | ) |
| **CHANNING D. PHILLIPS, U.S.** | ) |
| **ATTORNEY FOR THE** | ) |
| **DISTRICT OF COLUMBIA,** | ) **Case No. _____** |
| **Attn:  Civil Process Clerk** | ) |
| **United States Attorney's Office** | ) |
| **555 4th Street, NW** | ) |
| **Washington, DC 20530,** | ) |
| *-Via Certified Mail* | ) |
| | ) |
| **MERRICK GARLAND,** | ) |
| **U.S. ATTORNEY GENERAL,** | ) |
| **10th & Pennsylvania Avenue, NW** | ) |
| **Washington, DC 20530,** | ) |
| *-Via Certified Mail* | ) |
| | ) |
| **ANTONY BLINKEN**, **SECRETARY,** | ) |
| **U.S. DEPARTMENT OF STATE,** | ) |
| **2201 C Street, NW** | ) |
| **Washington, DC 20520,** | ) |
| *-Via Certified Mail* | ) |
| | ) |

## CIVIL COMPLAINT FOR EQUITABLE
## AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Stephanie Garza by and through counsel, files this civil complaint and demand for jury trial against Defendant Antony Blinken, Secretary, the United States Department of the State, for discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

## JURSIDICTION AND VENUE

1.      This Court has personal jurisdiction over Defendant because Defendant conducts regular business in the District of Columbia and because it maintains regular and systematic contacts with the District of Columbia.

2.      This Court has subject matter jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 28 U.S.C. §§ 1331, 1332, 1343.

3.      Venue in this district is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391, because this is where the employment records relevant to Defendant's unlawful practices are maintained and administered and because Defendant maintains its principal office in this district.

4.      Garza has exhausted the administrative remedies available to her.

## PARTIES

5.      Plaintiff Stephanie Garza is a resident of Indiana and has worked for Defendant since in or about November 2010.

6.      Defendant is an executive department that oversees foreign policy and international affairs and is headquartered in the District of Columbia.

## FACTUAL ALLEGATIONS

7.      Defendant hired Garza in or about August 2010 as a human resources specialist and she has worked in Austria, Pakistan, Russia, Venezuela, Mexico, and Haiti over the past eleven years.

8.      On or about September 22, 2019, Garza was posted in Mexico City. Garza directly reported to Marco Sims, Defendant's management counselor in Embassy Mexico, and her second line supervisor was Thomas Favret, the minister counselor for management affairs.

9.      On or about October 4, 2019, Favret entered Garza's office and said, "wow, there are lots of women working here," or words to that effect. Favret then asked if human resources discriminated against men since there were "too many women." Favret further stated that his wife was a feminist and expressed frustration with him at times. Garza then asked Favret to leave her office, and Favret declared as he was leaving that he supports women, that he had historically given them good reviews, and "I have to support women even if they take some of the jobs I want."

10.     Favret frequently called Garza into his office for unscheduled meetings, often to discuss topics unrelated to work. Garza noticed Favret would stare at her breasts during these meetings.

11.     Garza would pass by Marco Sims's office to reach Favret's office. Garza asked Sims to join her in Favret's office when he would see her pass by to prevent Garza from being alone with Favret.

12.     April Chappelle, an office management specialist who was temporarily working for Favret, told Garza about an interaction she had with Favret in or about August 2019 when Favret asked Chappelle if she had retrieved the mail as he was expecting a package containing

colorful underwear that his wife likes. Favret then turned to two nearby female employees and asked them if they would like to see his underwear while tugging at his belt.

13.     On or about November 1, 2019, Favret greeted Garza by stating, "hi beauty."

14.     On or about November 6, 2019, Favret interrupted a meeting and stated, "oh, should I leave until after the spanking?" and then exited the room.

15.     On or about November 7, 2019, Garza met with John Creamer, Defendant's deputy chief of mission and Favret's supervisor, to report Favret's behavior.

16.     Garza presented Creamer with a list of complaints against Favret, and in response Creamer scolded Garza and complained that he was busy and that Garza was creating more work for him. Creamer further declared that Favret was Garza's "problem" and that her reports of sexually inappropriate comments made by Favret were nonsensical. In response Garza informed Creamer that she would be filing a complaint of discrimination with Defendant's Equal Employment Opportunity office. The Department of State transferred Garza later that day to Embassy Nassau for 30 days. Garza returned to Mexico City in or around mid-December 2019.

17.     On or about November 19, 2021, Defendant's human resource's Office of Conduct Suitability and Discipline contacted Garza and asked to speak to her about Favret. Garza requested that Creamer counsel Favret, however, unbeknownst to Garza, Creamer had allegedly already counseled Favret but neglected to inform her.

18.     After Garza returned to Mexico City, she immediately noticed that Creamer's behavior had changed towards her. For example, Sims asked Garza in or about December 2019 to attend a meeting with Sims and Creamer. When Creamer saw that Garza was with Sims for the meeting, Creamer stated to Sims, "so Marco, it's just going to be you and me meeting, right?"

19.     Similarly, Garza attended a meeting with Creamer and other supervisors in or around May 2020. Creamer asked each attendee to give an update on their work, but when it was Garza's turn to speak, Creamer only asked a yes or no question and quickly moved on. Sims declared that he believed Creamer's treatment of Garza was motivated by Garza's gender due to the way Creamer had treated Garza's predecessor, who was male.

20.     On or about February 21, 2020, Mexico held a "day without women" to bring attention to several gruesome murders of women in Mexico. The Canadian and British embassies both gave their female employees administrative leave for the day. Garza also discussed giving female employees leave, but Favret stated doing so would be discriminatory against men.

21.     On or about June 5, 2020, Garza contacted Deborah Larson, acting director, Bureau of Western Hemisphere Affairs, and Julie Chung, principal deputy assistant secretary, to report her frustration with Creamer's refusal to engage in any preventive or corrective measures to address and redress Favret's discriminatory behavior.

22.     On or about June 18, 2020, Favret belittled diversity and inclusion during a meeting, making a joke about "beard discrimination."

23.     On or about June 19, 2020, Garza received an email from an Entry Level Officer ("ELO") concerning a talk Favret had given that the ELO found offensive towards women, people of color, and the LGBT community. The ELO officer also reported that Favret diminished the Black Lives Matter movement.

24.     On or around June 25, 2020, a different ELO contacted Garza, reporting that he heard Favret give another talk during which Favret declared, "women in the workplace are just like Black Lives Matter, you don't really notice it until it's brought to your attention." The ELO also reported that Favret made a homophobic comment.

25.     On or about June 23, 2020, Garza emailed Ambassador Christopher Landau, Acting Director Deborah Larson, Principal Deputy Assistant Secretary Julie Chung, and Creamer to report Favret's continuing discriminatory behavior.

26.     In response Larson requested that Garza draft a curtailment cable that would immediately curtail Favret from Embassy Mexico. Garza drafted the curtailment order and emailed it to Landau and Creamer on or about June 25, 2020, for review and approval.

27.     After receiving Garza's draft curtailment order, Landau and Creamer purportedly determined it was a conflict of interest for Garza to draft the order due to Garza's active EEO complaint against Favret. Creamer described Garza's draft curtailment order as "emotional."

28.     On or about June 30, 2020, Creamer conducted his own investigation into other discrimination complaints against Favret. It was later discovered that Favret had discrimination complaints against him from more than one embassy.

29.     On or about June 30, 2020, Garza filed an EEO complaint against Creamer on the basis of sex, reprisal, and hostile work environment.

30.     On or around September 17, 2020, the investigation into Favret's conduct was completed and Landau instructed Creamer to ask Favret to voluntarily depart from his post in Mexico City. Faced with the possibility of an involuntarily curtailment, Favret worked out a settlement to retire early from the Department of State and subsequently retired on or about October 6, 2020.

31.     On or about October 2, 2020, Garza submitted a request for curtailment due to the damaged relationship between Garza and the front office because her work environment had become intolerable due to the sequalae of her discrimination complaints against Favret and management's reluctance to confront and deal with same.

6

32.      On or about April 28, 2021, Garza attended alternative dispute resolution related to her EEO complaint against Creamer, but it was unsuccessful.

33.      On or about August 17, 2021, the Department of State issued Garza a proposed letter of reprimand related to an incident occurring on or about April 2019, in which it alleged that Garza improperly allowed a diplomatic security employee to telework after departing from Embassy Caracas even though a subsequent investigation found the allegations to be unsubstantiated.  Garza submitted a rebuttal to the proposed letter of reprimand on or about September 15, 2021.

34.      As a result of State Department's illegal actions, Garza has sustained economic damages and mental anguish, and she will continue to sustain damages into the future.

## COUNT I
### Discrimination Based on Sex in Violation of
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, *et seq*.

35.      Garza hereby incorporates each and every allegation set forth in the preceding paragraphs as fully alleged herein.

36.      Garza is an "employee" as defined in 42 U.S.C. § 2000e(f).

37.      Defendant is an "employer" as defined by 42 U.S.C. § 2000e.

38.      Garza is female and falls with in a class of protected persons under Title VII.

39.      Garza engaged in protected activity when she complained about sexual harassment by Favret.

40.      Garza engaged in protected activity when she complained about discrimination based on sex, hostile work environment, and reprisal by Creamer.

41.      Defendant made enduring unwanted conduct a condition of Garza's employment when it kept her discriminator as her second line supervisor and forced her to attend meetings

7

and interact with her discriminator during and following the investigation of her complaint.

42.     At all times relevant to this complaint, Garza was fully qualified for her position at the State Department.

43.     Defendant discriminated against Garza based on her sex when it subjected her to discrimination, hostile work environment, and reprisal perpetuated by Favret and Creamer.

44.     There is no legitimate business reason for Defendant's failure to correct Favret and Creamer's behavior.

45.     Garza sustained damages as the result of Defendant's illegal discrimination in violation of Title VII, including, but not limited to, damage to her career, and emotional, mental, and physical distress.

46.     Garza is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to economic and compensatory damages, as well as reasonable costs and attorneys' fees.

**COUNT II**
**Retaliation Based on Sex in Violation of**
**Title VII of the Civil Rights Act of 1964**
**42  U.S.C. § 2000e,** *et seq*.

47.     Garza incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

48.     Garza is an "employee" as defined in 42 U.S.C. § 2000e(f).

49.     Defendant is an "employer as defined in 42 U.S.C. § 2000e.

50.     Garza engaged in protected activity when on November 7, 2019, she complained to Creamer about Favret's behavior; when in November 2019, Garza filed an EEO complaint; when on June 5 and June 23, 2020, Garza complained to Larson and Chung regarding

Creamer's inaction to address Favret's behavior; and on June 30, 2020, when Garza filed an

EEO complaint against Creamer.

51.     Defendant retaliated against Garza for engaging in protected activity when it

issued her a proposed letter of reprimand on August 17, 2021, for an incident in April 2019 that

was investigated and found to be unsubstantiated.

52.     Defendant's stated and forthcoming reasons for issuance of the letter of

proposed reprimand are pretext.

53.     Garza has suffered damages as a result of Defendant's unlawful actions.

54.     For Defendant's unlawful retaliation against Garza in violation of Title VII,

Garza is entitled to such legal or equitable relief as will effectuate the purposes of Title VII,

including but not limited to promotion, compensatory damages, and reasonable costs and

attorneys' fees.

## COUNT III
### Hostile Work Environment Based on Sex in Violation of
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, *et seq*.

55.     Garza incorporates the allegations set forth in the foregoing paragraphs as

though fully alleged herein.

56.     Garza is an "employee" as defined in 42 U.S.C. § 2000e(f).

57.     Defendant is an "employer as defined in 42 U.S.C. § 2000e.

58.     Defendant subjected Garza to a hostile work environment based on her

membership in a protected class as a female employee.

59.     Garza communicated to management personnel at the State Department that

Favret's sexual advances, conduct, and behavior was unwelcome.

9

60.     Garza communicated to management personnel at the State Department that Creamer's conduct was unwelcome.

61.     Favret and Creamer's harassment of Garza was severe and pervasive to affect a term, condition, or privilege of employment, causing Garza to take a voluntary curtailment to a less desirable post.

62.     Garza has suffered damages as a result of Defendant's unlawful actions.

63.     For Defendant's creation of a hostile work environment against Garza in violation of Title VII, Garza is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to promotion, compensatory damages, and reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

Based on the foregoing claims, Garza respectfully requests the Court enter judgment in her favor and award her the following relief:

a.     Reinstatement with the same status, duties, and working conditions applicable at the time of her curtailment, and abatement of the retaliatory conduct directed toward her, or alternatively, front pay;

b.     Economic damages for lost wages and benefits;

c.     Unpaid wages;

d.     Pre-judgment interest;

e.     Compensatory (non-economic) damages, including damages for mental and emotional distress and harm to reputation;

f.     Costs and reasonable attorneys' fees; and

g.     Any other just and equitable relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

/s/ R. Scott Oswald
R. Scott Oswald, Esq.
Olivia Firmand, *pro hac vice to be filed*
The Employment Law Group, P.C.
1717 K Street NW, Ste. 1110
Washington, DC 20006-5345
(202) 261-2838
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
ofirmand@employmentlawgroup.com
*Counsel for the Plaintiff*

11