## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEPHANIE GARZA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 21-cv-2770 (APM)** |
| ) | |
| **ANTONY BLINKEN,** ) | |
| *Secretary of United States Department of State,* ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I.

Plaintiff Stephanie Garza, a human resource specialist for the U.S State Department ("the Department"), brings the instant action against Defendant Secretary of State Antony Blinken in his official capacity, alleging discrimination and hostile work environment based on sex and retaliation in violation of Title VII of the Civil Rights Act of 1964.

On February 27, 2023, this court granted Defendant's motion to dismiss without prejudice. *See Garza v. Blinken*, No. 21-cv-02770 (APM), 2023 WL 2239352 (D.D.C. Feb. 27, 2023) (*Garza I*). Four days before the grant of dismissal, Plaintiff sought leave to file an amended complaint, as to which the court deferred ruling. Pl.'s Mot. for Leave to File First Am. Compl., ECF No. 20 [hereinafter Pl.'s Mot.]. The court now considers Plaintiff's motion for leave to file an amended complaint. For the stated reasons, Plaintiff's motion is denied.

### II.

This court previously recounted the allegations in Plaintiff's initial complaint in detail. *See Garza I*, 2023 WL 2239352, at *2. For purposes of this motion, the court simply recites the

allegations Plaintiff adds to her proposed amended complaint.  *See* Pl.'s Mot., Pl.'s First Am. Compl., ECF No. 20-2 [hereinafter Am. Compl.].

*Thomas Favret.*  Plaintiff's new allegations regarding her direct supervisor, Thomas Favret, exclusively consist of remarks that Favret made to others.  Specifically, Plaintiff now alleges that Favret said: (1) "[y]ou're not a brown person" to a colleague who identified as being a brown person, *id.* ¶ 34; (2) "Can I be your boyfriend" to a human resource employee, *id.* ¶ 69; (3) "[w]e have a lot of female CGs, can't we recruit some men to be CGs or is that against the rules?" to a female employee, *id.* ¶ 70; (4) "I didn't know they had given you all citizenship already" to an officer who was born in Puerto Rico, *id*. ¶ 71; and (5) that non-native English speakers were "dumbing down the gene pool" of the Foreign Service Officers, *id*. ¶ 72.

*John Creamer.*  Plaintiff alleges that John Creamer, Favret's direct supervisor, did not attend a mission wide Equal Employment Opportunity ("EEO") training and that his "absence and silence signaled to the community that he did not care about EEO compliance and the safety of the Department's employees."  *Id*. ¶ 46.

*Letter of Admonishment.*  Finally, Plaintiff adds that Phil Lussier, the Deputy Assistant Secretary of the Bureau of Global Talent Management, "issued a decision on the proposed Letter of Reprimand" ("LOR") in the form of a Letter of Admonishment ("LOA") that would "remain in [her] personnel file for one year after issuance."  *Id*. ¶¶ 92, 94.  Plaintiff alleges that she was not "recommended for promotion" due to the LOA being placed in her file.  *Id*. ¶ 95.

### III.

Rule 15 dictates that generally, courts should "freely" grant leave to amend "when justice so requires."[1]  FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, a

---

[1] Motions to amend under Rules 15(a) and 15(d) are subject to the same standard.  *See United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (observing that the distinction between Rules 15(a) and 15(d) "is in most instances of

court can deny a plaintiff leave to amend her complaint if granting leave would be "futile," meaning the proposed pleading would not survive a motion to dismiss.  *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010) (explaining that a court's denial of leave to amend on futility grounds "is for practical purposes, identical to review of a 12(b)(6) dismissal based on the allegation in the amended complaint").  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Defendant argues that Plaintiff's amended complaint is futile because the additional allegations do not cure the deficiencies in the original complaint to support claims of sex discrimination, hostile work environment, or retaliation.  Mem. in Opp'n to Pl.'s Mot. for Leave to File First Am. Compl., ECF No. 22 [hereinafter Def.'s Opp'n], at 5.  The court addresses each claim in turn.

## IV.

To sufficiently plead a sex discrimination claim, a plaintiff must allege factual matter that could plausibly show she (1) "suffered an adverse employment action" (2) "because of [her] sex." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  Because Plaintiff's added allegations do not plausibly make out causation, her proposed amendment is futile.

Plaintiff does not allege that the LOA was issued *because of* her sex.  Rather, Plaintiff contends that "[t]here is no justification" for the LOA "other than for [Plaintiff's] initiation and pursuit of her EEO complaint in 2020."  Pl.'s Mot., Pl.'s Mem. In Supp. Of Mot., ECF No. 20-1, at 5.  This is so, Plaintiff contends, because Jeanne Juliao, the Resolving Official during the EEO Alternate Dispute Resolution ("ADR") process, had a "favorable" opinion of Creamer and

---

little moment").  Therefore, this court will not address the differentiated arguments made by Plaintiff concerning the two sections of the rule.

"exhibited bias" against Plaintiff, and Juliao's colleagues issued the LOR (Lynne Skeirik) and the LOA (Lussier).  Am. Compl. ¶¶ 82–85, 92–93.  Even accepting as true that Juliao favored Creamer during the ADR process, the chain of events leading to the LOA issuance is too attenuated to infer sex-based discrimination on the part of Lussier, the LOA issuer.  Plaintiff does not allege that Juliao favored Creamer in the ADR process *due to* Plaintiff's sex.  Even if she did, Plaintiff does not allege any facts to support the conclusion that Lussier issued the LOA *because of* Juliao's or Lussier's sex-based bias.  Because Plaintiff does not allege a plausible nexus between sex-based motives and the LOA, her discrimination claim is futile.

## V.

"A plaintiff asserting a claim based on a hostile work environment faces a high hurdle." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016).  She must allege facts sufficient to "show that [her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Baloch*, 550 F.3d at 1201 (internal quotation marks omitted). Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Courts typically require "a course of conduct—as distinct from a discrete act—often occurring over a series of days or perhaps years."  *Fields*, 207 F. Supp. 3d at 93 (internal quotation marks omitted).

Defendant argues that the additional factual allegations do not support a hostile work environment claim.  Def.'s Opp'n at 4–5.  The court agrees.  All of the new allegations against Favret and Creamer refer to "[c]onduct directed at others rather than at plaintiff," which is "less

4

indictive of a hostile work environment." *Lester v. Natsios*, 290 F. Supp. 2d 11, 31 (D.D.C. 2003); *see* Am. Compl. ¶¶ 34, 46, 69–72. While Plaintiff does allege some conduct that is undoubtedly objectionable and offensive, *Garza I*, 2023 WL 2239352, at *7, the conduct does not rise to the level of a hostile work environment *against her*. *See Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 117 (D.D.C. 2015) (Although "second-hand gossip may be . . . unpleasant to hear, [ ] it lacks the severity or pervasiveness necessary to affect the terms or conditions of employment and to give rise to an environment that is subjectively and objectively hostile."); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78–81 (D.D.C. 2007) (holding that comments made outside the plaintiff's presence did not give rise to an actionable hostile work environment); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005) ("When racial statements are not made directly to a plaintiff, generally a hostile environment cannot be established."), *aff'd sub nom. Nurriddin v. Griffin*, 222 F. App'x 5, 5–6 (D.C. Cir. 2007). "[T]he impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff." *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1144 (7th Cir. 1997).

## VI.

For a Title VII retaliation claim, a plaintiff must plausibly plead that "she suffered (i) a materially adverse action (ii) because [she] had brought or threatened to bring a discrimination claim." *Baloch*, 550 F.3d at 1198. An action is "materially adverse" when "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In *Garza I*, the court agreed with Plaintiff that "the long delay between the alleged misconduct and the proposed reprimand is curious, but ultimately . . . a mere proposed [letter of] reprimand, even in the retaliation context, is not an adverse action." *Garza I*, 2023 WL 2239352, at *6. This court relied on *Baloch*, in which

the D.C. Circuit explained that "courts have been unwilling to find adverse actions where the suspension is not actually served." *Baloch*, 550 F.3d at 1199.

Now, Plaintiff contends that the LOA was a materially adverse action because it prevented her from being recommended for a promotion. Am. Compl. ¶ 95. That added allegation does not render Plaintiff's retaliation claim plausible.

The court in *Bain* confronted similar allegations. There, the plaintiff had received counseling letters and less-than-positive performance evaluations, which she claimed were materially adverse actions in response to protected conduct. The court reaffirmed that, in the retaliation context, "letters of counseling and performance reviews typically do not constitute materially adverse actions absent some further tangible job consequences," such as "promotion opportunities." *Bain v. Off. of the Att'y Gen.*, No. 21-cv-1751 (RDM), 2022 WL 17904236, at *23 (D.D.C. Dec. 23, 2022) (internal quotation marks omitted). However, letters of counseling could be "materially adverse actions" if they "create a predictable and direct prospect of such consequences, [because] they might well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks omitted). The court held that the plaintiff's letters of counseling and performance reviews were not adverse actions, even though the plaintiff contended that "each of these occurrences became part of her record and that DOJ relied on them when taking more tangible actions against her, most notably terminating her." *Id.* The question is not, the court reasoned, whether a "tangible job consequence[] eventually occur[s]," but rather, "whether these consequences were foreseeable at the time the challenged actions occurred." *Id.* Because "there was no reason to believe that [the negative reviews] would provide support for her later dismissal," the connection between those reviews and her later termination was "entirely speculative" and thus "[did] not suffice." *Id.*

The same is true here.  Plaintiff does not allege any facts that would support the plausible inference that when she received the LOA it was foreseeable that it would negatively impact her promotion eligibility.  She does not, for example, point to any Department policy connecting LOAs to promotion consideration.  To the contrary, Plaintiff does not contest that, under the Department's policy, LOAs are mere "warnings" and are *not* retained in an employee's "Official Performance File." Foreign Affairs Manual § 3 FAM 4310, 32, U.S. Dep't of State, https://fam.state.gov (last visited July 19, 2023) [hereinafter Foreign Affairs Manual[2]]; *see* Am. Compl. ¶¶ 95–96.  Plaintiff nevertheless asserts that her LOA, contrary to policy, remained in her file for a year.  *See* Am. Compl. ¶ 94.  But even accepting that as true, an LOA *when received* would not have dissuaded a reasonable person from engaging in protected activity because the agency's stated policy was that it would have no adverse effect.  *See* Foreign Affairs Manual.  As in *Bain*, Plaintiff here has merely created a connection between the LOA and her non-promotion that, if believed, is "apparent only in hindsight" and was "entirely speculative" at the time she received the LOA.  *Bain*, 2022 WL 17904236, at *23.  That is not enough to convert an LOA into a materially adverse action.  Consequently, Plaintiff's amended retaliation claim is futile.

---

[2] "The Court may take judicial notice of information posted on the official public websites of government agencies at the motion to dismiss stage."  *Melkumyan v. Power*, No. 21-cv-2700 (RC), 2022 WL 2904266, at *1 n.1 (D.D.C. July 22, 2022).

### VII.

For the foregoing reasons, Defendant's motion for leave to file a first amended complaint, ECF No. 20, is denied.[3]  A final, appealable order accompanies this Memorandum Opinion.

Dated:  July 19, 2023

Amit P. Mehta
United States District Court Judge

---

[3] The court need not resolve Defendant's Rule 59(e) argument, Def.'s Opp'n at 3, because the court's denial of Plaintiff's motion for leave to amend under Rule 15 comes down to the same futility question—whether Plaintiff's "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1128 (D.C. Cir. 2015).